1  ARI J. LAUER (CA SBN 144017)
   LAW OFFICES OF ARI J. LAUER
2  2125 Oak Grove Road, Suite 210
   Walnut Creek, CA 94598
3  Tel:  (925) 933-7012
   Fax: (925) 933-7017
4  Email: alauer@lauerlaw.com

5  Attorneys for Defendant ARI J. LAUER

6

7

8                    UNITED STATED DISTRICT COURT

9                  EASTERN DISTRICT OF CALIFORNIA

10

11 SECURITIES AND EXCHANGE            )  CASE NO. 2-22-CV-01726-DAD-DB
   COMMISSION,                        )
12                                    )  **NOTION OF MOTION AND**
              Plaintiff,              )  **MOTION TO DISMISS;**
13                                    )  **MEMORANDUM OF POINTS AND**
   vs.                                )  **AUTHORITIES IN SUPPORT**
14                                    )  **THEREOF; MEET AND CONFER**
   ARI J. LAUER,                      )  **CERTIFICATION**
15                                    )
              Defendant.              )  Date:      April 4, 2023
16 _____  )  Time:      1:30 p.m.
                                         Courtroom:  4
17

18      TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

19         NOTICE IS HEREBY GIVEN that on April 4, 2023, at 1:30 p.m., or as soon thereafter

20 as the matter may be heard before the Honorable Dale A. Drozd in Courtroom 4 of the above-

21 entitled Court, located at 501 I Street, Sacramento, California, defendant Ari J. Lauer will

22 move this Court for an Order dismissing the Complaint and each Claim for Relief alleged

23 therein.

24

25         This Motion is brought pursuant to Federal Rule of Civil Procedure 12(b)(6) on the

26 grounds that the Complaint and each Claim for Relief alleged therein fail to state a claim upon

27 which relief can be granted.

28

                              _____
                              **NOTICE OF MOTION AND MOTION TO**
                              **DISMISS**

1    This Motion will be based on this Notice, the attached Memorandum of Points and

2  Authorities, and on such further evidence and argument as may be presented by way of Reply

3  and at the hearing on this Motion.

4

5  Dated: December 22, 2022                    LAW OFFICES OF ARI J. LAUER

6

7

8                                             By: _____

9                                                        ARI J. LAUER
                                                 Attorneys for Defendant

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**NOTICE OF MOTION AND MOTION TO
DISMISS**

# TABLE OF CONTENTS

I.     INTRODUCTION  ............................................................................. 1

II.    LEGAL STANDARD     ................................................................. 2

III.   RELEVANT FACTS     ................................................................. 2

IV.    EACH CLAIM FOR RELIEF FAILS TO STATE A CLAIM
       UPON WHICH RELIEF CAN BE GRANTED SINCE THERE
       WAS NO SALE OF A SECURITY .................................................. 3

       A.    Each Claim For Relief Requires The Sale of a Security ................... 3

       B.    The Definition of a "Security"   ........................................... 3

       C.    Three Separate Transactions; Each Not an Investment Contract ...... 3

             i.     Creation of Investment Fund Limited Liability Company .... 4

             ii.    Purchase of Generators from Solutions ................................. 4

             iii.   Lease of Generators to Distribution ......................................... 4

       D.    Even If Taken As One Transaction; Still Not A Security Since
             No Common Enterprise   ................................................... 5

       E.    Even If Taken As One Transaction; Still Not A Security Since
             No Expectation of Profits Produced By The Effort of Others ........ 6

V.     THE FIRST AND SECOND CLAIMS FOR RELIEF FAIL TO
       STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED
       BECAUSE LAUER OWED NO DUTY TO DISCLOSE ........................ 7

       A.    No Liability for Failure to Disclose Absent a Duty to Do So .......... 7

       B.    Lauer Owed No Duty to The Fund Investors and Their Counsel ..... 8

       C.    Lauer Actually Owed a Duty Not to Disclose  ................................. 9

             i.     The Attorney-Client Privilege ................................................. 9

             ii.    The Duty of Confidentiality ..................................................... 10

       D.    Plaintiff Alleges Lauer Should Have Disclosed Attorney-Client
             Privileged and Confidential Information ............................................ 10

VI.    THE FIRST AND SECOND CLAIMS FOR RELIEF FAIL TO
       STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED
       BECAUSE LAUER DID NOT EMPLOY A MANIPULATIVE,
       DECEPTIVE OR FRAUDULENT DEVICE   ........................................... 11

| | A. | Employment of Manipulative, Deceptive or Fraudulent Device Required ............................................ | 11 |
| | B. | The Transaction Documents Are Not Representations of Distribution's Ability to Pay ............................ | 11 |
| | C. | The Closing Documents Cannot Create Obligations On A Nonparty ........................................ | 12 |
| | D. | The Closing Documents Are Arms-Length Transactions Negotiated by Counsel ............................ | 12 |
| | E. | An Attorney Preparing Documents Is Not Making Representations to the Opposing Party ................ | 13 |
| | F. | The Investors and Their Counsel Cannot Rely on Lauer's "Representations" ........................ | 14 |
| | G. | An Attorney Providing Legal Services Is Not Enough to Establish Liability ........................ | 15 |
| | H. | Lauer Allegedly Being Aware of Distribution's Financial Condition and Drafting the Transaction Documents Does Not Constitute Fraud ................................ | 15 |
| VII. | | THE SECOND CLAIM FOR RELIEF FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED BECAUSE LAUER DID NOT OBTAIN MONEY OR PROPERTY .................... | 16 |
| VIII. | | THE THIRD AND FOURTH CLAIMS FOR RELIEF FOR AIDING AND ABETTING FAIL TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED ................ | 17 |
| | A. | No Aiding and Abetting Liability Since No Duty to Disclose .. | 17 |
| | B. | No Aiding and Abetting Liability Since No Direct Liability ..... | 18 |
| IX. | | CONCLUSION ........................................ | 18 |

## TABLE OF AUTHORITIES

### Cases

*ACP GP, LLC v. Putnam County Memorial Hospital*
2016 WL 5109143, at *2 (D.N.J. Sept. 19, 2016) ................................. 13

*Advanced Cardiovascular Sys., Inc. v. Scimed Life Sys., Inc.*
988 F.2d 1157, 1160 (Fed. Cir. 1993) ............................................. 2

*ARE Sikeston Limited Partnership v. Weslock Nat., Inc.*
932 F. Supp. 240, 242 (E.D. Mo. 1996) ........................................... 12

*Ave. Cap. Mgmt. II, L.P. v. Schaden*
843 F.3d 876, 882 (10th Cir. 2016) .................................................. 3

*Barker v. Henderson, Franklin, Starnes & Holt*
797 F.2d 490, 496 (7th Cir. 1986) ........................................... 8, 17, 18

*Baumer v. Pachl*
8 F.3d 1341, 1344 (9th Cir. 1993) ............................................... 15

*Biofeedtrac, Inc. v. Kolinor Optical Enterprises & Consultants, S.R.L.*
832 F.Supp. 585, 591 (E.D. NY., 1993) ........................................ 15

*B.L.M. v. Sabo & Deitsch*
(1997) 55 Cal.App.4th 823, 832, 839 ........................................... 13

*Bracht v. Grushewsky*
448 F.Supp.2d 1103 (E.D. Mo. 2006) ........................................... 15

*Chiarella v. United States*
445 U.S. 222, 228, 235 (1980) ............................................. 7, 8, 17

*Chubb & Son v. Superior Court*
(2014) 228 Cal.App.4th 1094, 1104 ........................................... 10

*Citibank, N.A. v. Itochu International Inc.*
2003 WL 1797847, at *1 (S.D.N.Y. Apr. 4, 2003) ............................ 12

*Cordas v. Specialty Restaurants, Inc.*
470 F.Supp. 780, 788 (D. Or.1979) ............................................ 6

*Dietz v. Meisenheimer & Herron*
(2009) 177 Cal.App.4th 771, 786 .............................................. 10

*Dirks v. S.E.C.*
463 U.S. 646, 654-55 (1983) ............................................... 8, 17

*E.E.O.C. v. Waffle House, Inc.*
534 U.S. 279, 294, (2002) .................................................... 12

*Elijah W. v. Superior Court*
(2013) 216 Cal.App.4th 140, 151   ............................................................   10

*Elson v. Geiger*
506 F.Supp. 238, 243 (E.D. Mich. 1980)   ...............................................   6

*Fortson v. Winstead, McGuire, Sechrest & Minick*
961 F.2d 469, 472 (4th Cir. 1992)   ........................................................   8

*Fox v. Pollack*
(1986) 181 Cal.App.3d 954, 961   ...........................................................   8

*Glade v. Superior Court*
(1978) 76 Cal.App.3d 738, 743   ............................................................   10

*Gordon v. Terry*
684 F.2d 736, 741 (11th Cir. 1982)   .......................................................   7

*Gowen Oil Company, Inc. v. Abraham*
2010 WL 11463696, at *6 (S.D. Ga. Sept. 3, 2010)   ..............................   12

*Heine v. Bank of Oswego*
144 F. Supp. 3d 1198, 1218 (D. Or. 2015)   ...........................................   11

*In re Cascade International Securities Litigation*
840 F.Supp. 1558, 1564-65 (S.D. Fla. 1993)   .......................................   9

*In re Gilead Sciences Securities Litigation*
536 F.3d 1049, 1055 (9th Cir. 2008)   ....................................................   2

*In re Towers Financial Corporation Noteholders Litigation*
1995 WL 571888, at *17 (S.D.N.Y. Sept. 20, 1995)   ............................   10

*Lopes v. Vieira*
543 F.Supp.2d 1149, 1176 (E.D. Cal. 2008)   .......................................   14

*Nolte v. Pearson*
994 F.2d 1311, 1317 (8th Cir. 1993)   ....................................................   15

*Renovitch v. Kaufman*
905 F.2d 1040, 1048 (7th Cir. 1990)   ....................................................   10

*Robertson v. Dean Witter Reynolds, Inc.*
749 F.2d 530, 534 (9th Cir. 1984)   ........................................................   2

*Schatz v. Rosenberg*
943 F.2d 485, 490 (4th Cir. 1991)   .........................................   8, 9, 13, 14, 15, 18

*Schempp v. GC Acquisition, LLC*
630 F.Appx. 541, 545-46 (6th Cir. 2015)   .............................................   13

*S.E.C. v. Goldfield Deep Mines Co. of Nevada*
758 F.2d 459, 463 (9th Cir. 1985)   ........................................................   5

*S.E.C. v. W.J. Howey*
328 U.S. 293, 298-99 (1946)   ................................................................   3

*S.E.C. v. R.G. Reynolds Enterprises, Inc.*
952 F.2d 1125, 1130 (9th Cir. 1991)   ............................................   3

*Smith v. Gross*
604 F.2d 639, 642 (9th Cir. 1979)   ................................................   6

*Tocco v. Richman Greer Professional Association*
553 F.Appx. 473, 475 (6th Cir. 2013)   ........................................   8, 14

*Trefoil Park, LLC v. Key Holdings, LLC*
2016 WL 837920, at *5 (D. Conn. Mar. 3, 2016)   ................................   12

*United Sportfishers v. Buffo*
597 F.2d 658 (9th Cir. 1978)   ........................................................   4

*United States Securities and Exchange Commission v. DiMaria*
207 F.Supp.3d 343, 358 (S.D.N.Y. 2016)   ......................................   17

*U.S. Securities and Exchange Commission v. Syron*
934 F.Supp.2d 609, 640 (S.D.N.Y. 2013)   ......................................   17

*United States Securities and Exchange Commission v. Wey*
246 F.Supp.3d 894, 915 (S.D.N.Y. 2017)   ......................................   16

*Zador Corp. v. Kwan*
(1995) 31 Cal.App.4th 1285, 1293   ................................................   10

**<u>Statutes</u>**

15 U.S.C. §77q(a)   ........................................................................   3, 11

15 U.S.C. §78j(b)] and Rule 10b-5 thereunder [17 C.F.R.-§240.10b-5] ............   3, 11

California Business & Professions Code §6068(e)(1) ........................................   9

Federal Rule of Civil Procedure 12(b)(6) ........................................................   2

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

## I.      <u>INTRODUCTION</u>

Plaintiff Securities and Exchange Commission alleges four Claims for Relief predicated upon the sale of a security.  However, plaintiff attempts to stitch together three separate transactions to create a "security" where none exists.  Moreover, even if the three transactions are treated as one, the transaction still fails two of the three prongs of the *Howey* test, the test articulated by the U.S. Supreme Court for the definition of a "security."  Since there is no security involved, the Complaint in its entirety fails to state a claim upon which relief can be granted.

In addition, there can be no securities liability for nondisclosure absent a duty to speak.  As counsel for DC Solar Solutions, Inc. and DC Solar Distribution, Inc., defendant Ari J. Lauer owed no duty to the adverse party, the Investors. In fact, the attorney-client privilege and the attorney's duty of confidentiality created a duty on the part of Lauer <u>not</u> to disclose the very information plaintiff alleges Lauer should have disclosed.  Since Lauer could not disclose the information, this information cannot be the basis of a securities fraud case.

The Claims for Relief alleged by plaintiff also require the employment of a manipulative, deceptive or fraudulent device by Lauer. However, legal counsel creating transaction documents does not make any representations upon which the investors may rely.  The mere provision of legal services is not enough to create liability.  Also, the Second Claim for Relief fails because Lauer receiving legal fees does not constitute "obtaining money" as required to establish this claim.

Finally, the Third and Fourth Claims for Relief for aiding and abetting fail because there is no primary liability on the part of Lauer and no duty to disclose.

**NOTICE OF MOTION AND MOTION TO DISMISS**

1

1      In sum, none of the Claims for Relief alleged by plaintiff state a claim upon which

2  relief can be granted and the Complaint in its entirety should be dismissed.

3

4  **II.**   **LEGAL STANDARD**

5      Rule 12(b)(6) provides for dismissal of an action for a failure to state a claim upon

6  which relief can be granted. F.R.C.P. 12(b)(6). The purpose of the Rule is to allow the

7  court to eliminate actions that are fatally flawed in their legal premises and destined to fail,

8  and thus to spare litigants the burdens of unnecessary pretrial and trial activity. *Advanced*

9  *Cardiovascular Sys., Inc. v. Scimed Life Sys., Inc.*, 988 F.2d 1157, 1160 (Fed. Cir. 1993).

10

11      A complaint may be dismissed as a matter of law for one of two reasons: (1) lack of

12  a cognizable legal theory or (2) insufficient facts under a cognizable legal claim. *Robertson*

13  *v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir. 1984). On a motion to dismiss

14  for failure to state claim upon which relief can be granted, the Court need not accept

15  allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable

16  inferences. *In re Gilead Sciences Securities Litigation*, 536 F.3d 1049, 1055 (9th Cir.

17  2008).

18

19  **III.**   **RELEVANT FACTS**[1]

20      Accepting all of Plaintiffs' allegations as true, the pertinent facts are as follows:

21      DC Solar Solutions, Inc. ("Solutions") was in the business of manufacturing and

22  selling mobile solar generators ("Generators"). (Compl. ¶5). Investors purchased

23  Generators from Solutions and then leased them to DC Solar Distribution, Inc.

24  ("Distribution"). (Compl. ¶5). Solutions and Distribution are separate legal entities.

25  (Compl. ¶16). Defendant Ari J. Lauer ("Lauer") was legal counsel for Solutions and

26  Distribution and prepared the transaction documents for the investments. (Compl. ¶7).

27  _____

28      [1]The facts alleged in the Complaint are accepted as true for purposes of this Motion, but Lauer vehemently denies the truth of the allegations of wrongdoing.

**NOTICE OF MOTION AND MOTION TO DISMISS**

2

**IV.**   **EACH CLAIM FOR RELIEF FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED SINCE THERE WAS NO SALE OF A SECURITY**

    **A.**   **Each Claim For Relief Requires The Sale of a Security**

The First Claim for Relief alleges Lauer violated Section 10(b) of the Exchange Act [15 U.S.C. §78j(b)] and Rule 10b-5 thereunder [17 C.F.R.-§240.10b-5] (Compl. ¶67).  The Third Claim for Relief alleges aiding and abetting violations of these same sections.  Both Section 15 U.S.C. §78j(b) and 17 C.F.R.-§240.10b-5 proscribe unlawful conduct "in connection with the purchase or sale of any security."

The Second Claim for Relief alleges Lauer violated Section 17(a) of the Securities Act [15 U.S.C. §77q(a)] (Compl. ¶70).  The Fourth Claim for Relief alleges aiding and abetting in violation of this same section.  Section 77q(a) proscribes unlawful conduct "in connection with the purchase or sale of any security."

Thus, each Claim for Relief requires the sale of a security.

    **B.**   **The Definition of a "Security"**

Plaintiff alleges the Investment Fund Contracts and Sale-Leaseback Contracts are securities in the form of investment contracts.  (Compl. ¶34). An "investment contract" within securities law requires (1) an investment of money; (2) in a common enterprise; (3) with an expectation of profits produced by the efforts of others. *S.E.C. v. R.G. Reynolds Enterprises, Inc.*, 952 F.2d 1125, 1130 (9th Cir. 1991); citing *S.E.C. v. W.J. Howey* (1946) 328 U.S. 293, 298-99. Whether interests conveyed constitute investment contracts is a question of law. *Ave. Cap. Mgmt. II, L.P. v. Schaden*, 843 F.3d 876, 882 (10th Cir. 2016).

    **C.**   **Three Separate Transactions; Each Not an Investment Contract**

Plaintiff attempts to stitch together three separate transactions to create a security where none exists.

**NOTICE OF MOTION AND MOTION TO DISMISS**

      i.    <u>Creation of Investment Fund Limited Liability Company</u>

First, the investors formed an Investment Fund Limited Liability Company ("Investment Fund"), an entity created specifically for the purpose of the investment. (Compl. ¶21).  There is no allegation that Solutions or Distribution ever held an interest in the Investment Fund or was a party to the LLC Agreement.  The Investment Fund fails the *Howey* Test since there was no investment of money.  Rather, the investors created a separate legal entity, wholly-owned by them, to make their investment.

      ii.    <u>Purchase of Generators from Solutions</u>

The Investment Fund then purchased Generators from Solutions. (Compl. ¶21).  A "security" is limited to investments and not other commercial dealings.  *United Sportfishers v. Buffo*, 597 F.2d 658 (9th Cir. 1978).  The Investment Fund's purchase of solar generators was a commercial transaction where money was exchanged for goods. In other words, a simple purchase of equipment.  The purchase fails the *Howey* test because there is no allegation, nor could there be, of a common enterprise or expectation that the Investment Fund would receive profits from the efforts of Solutions.  Phrased alternatively, Solutions' role was to manufacture and sell generators, which it did to the Investment Funds. Thereafter, the Investment Fund's efforts to lease the solar generators and realize a profit involved others; it did not involve Solutions at all.

      iii.    <u>Lease of Generators to Distribution</u>

Solutions and Distribution are two separate legal entities. (Compl. ¶16).[2]  The Investment Fund leased their Generators to Distribution. (Compl. ¶23). These leases fail the *Howey* Test because there is no investment of money in Distribution by the Investment

---

[2] While plaintiff admits Solutions and Distribution are separate entities, plaintiff tries to blur the lines by referring to them collectively as "DC Solar."  Solutions was a manufacturer of solar generators and Distribution was a leasing company.

1   Fund.  To the contrary, Distribution made lease payments to the Investment Fund for the

2   solar generators.

3

4        Given none of these transactions meets the *Howey* test for an investment contract,

5   there was no sale of a security and the Complaint should be dismissed.

6

7        **D.    Even If Taken As One Transaction; Still Not A Security Since No Common Enterprise**

8        The second element of the *Howey* test is a common enterprise.  A common

9   enterprise is a venture "in which the fortunes of the investor are interwoven with and

10  dependent upon the efforts and success of those seeking the investment or of third parties."

11  *S.E.C. v. Goldfield Deep Mines Co. of Nevada*, 758 F.2d 459, 463 (9th Cir. 1985). Thus, a

12  common enterprise exists if a direct correlation has been established between success or

13  failure of promoter's efforts and success or failure of the investment.  *Id*.

14

15       In  *Goldfield*, a common enterprise was found because the investors' fortunes were

16  clearly linked with those of promoter. The ore program required the sharing of profits, in

17  that promoter was to receive a 25% royalty fee for processing the investors' ore.

18  Furthermore, the fortunes of both the investors and promoter were dependent upon the

19  success of the investors' unique ore processing technique. If the processing technique were

20  to prove faulty, then both the investors and promoter would suffer financial losses. This

21  direct correlation between promoter's potential failure and the investors' losses supported

22  a finding of a common enterprise.

23

24       Unlike *Goldfield*, the Fund Investors fortunes are not linked to those of Solutions or

25  Distribution.  Solutions made money by selling solar generators to third parties whether the

26  Fund Investors leased the generators or not.  There is no correlation between their fortunes.

27  Similarly, the Fund Investors could make money from their lease with Distribution and

28  depending on the number of solar generators Distribution subleased, Distribution could

**NOTICE OF MOTION AND MOTION TO DISMISS**

5

1   make money or lose money. In addition, the Fund Investors could lease the solar

2   generators to other parties if Distribution breached the sublease, in which case there would

3   be no correlation between the fortunes.  There is no common enterprise between the Fund

4   Investors and either Solutions or Distribution because Solutions or Distribution's success

5   or failure does not translate to success or failure for the Fund Investors.

6

7        The second prong of the *Howey* test is not satisfied.  The transactions at issue in this

8   matter do not constitute securities and the Complaint should be dismissed.

9

10      **E.    Even If Taken As One Transaction; Still Not A Security Since No Expectation of Profits Produced By The Effort of Others**

11      The third element of the *Howey* test, an expectation of profits produced by the

12   efforts of others, requires "the efforts made by those other than the investor are the

13   undeniably significant ones, those essential managerial efforts which affect the failure or

14   success of the enterprise." *Smith v. Gross*, 604 F.2d 639, 642 (9th Cir. 1979)

15

16      In *Elson v. Geiger*, 506 F.Supp. 238, 243 (E.D. Mich. 1980), the return on

17   investment that had been promised to the purchasers was the lessee's rent payment. The

18   *Elson* Court noted that although the plaintiffs argued that seller-lessee's managerial ability

19   was requisite to a continuation of the timely rental payments, this contention alone does

20   not meet the *Howey* test. Every lessor, in some measure, is reliant upon his commercial

21   lessee's ability to manage the business profitably; however, such reliance will not render

22   every commercial lease a security.

23

24      Similarly, in *Cordas v. Specialty Restaurants, Inc.*, 470 F.Supp. 780, 788 (D.

25   Or.1979), the Court found that reliance by plaintiff sublessee on efforts of defendants in

26   their capacities as lessee and lessor was insufficient to establish that sublease fell within

27   *Howey* definition of a security where essential managerial decisions bearing on success of

28

**NOTICE OF MOTION AND MOTION TO DISMISS**

1   business were in plaintiff's hands so that there was not an expectation of profits to be

2   derived fully from efforts of others.

3

4        Finally, the Court in *Gordon v. Terry*, 684 F.2d 736, 741 (11th Cir. 1982) clarified

5   that an investor that has the ability to control the profitability of his investment by his own

6   efforts is not dependent upon the managerial skills of others. As such, arrangements which

7   grant the investors control over the significant decisions of the enterprise are not securities.

8

9        The opinions in *Elson, Cordas* and *Gordon* are instructive.  The third element of the

10  *Howey* Testis is not satisfied if the investor can make essential management decisions. The

11  Fund Investors leased the solar generators to Distribution, had to collect rent, terminate the

12  sublease for breach and potentially sue for damages, and find other lessees, if necessary, to

13  get profits.  All of those decisions belonged exclusively to the Fund Investors.

14

15       *Elson* clarifies that every lessor, in some measure, is reliant upon his commercial

16  lessee's ability to manage the business profitably; however, such reliance will not render

17  every commercial lease a security.  While the Fund Investors hoped Distribution would

18  make the rent payments under the lease, this does not make the lease a security.

19

20       The third prong of the *Howey* test is not satisfied.  The transactions at issue in this

21  matter do not constitute securities and the Complaint should be dismissed.

22

23  **V.     THE FIRST AND SECOND CLAIMS FOR RELIEF FAIL TO STATE A**

       **CLAIM UPON WHICH RELIEF CAN BE GRANTED BECAUSE LAUER**

24         **OWED NO DUTY TO DISCLOSE**

25       **A.     No Liability for Failure to Disclose Absent a Duty to Do So**

26       For 10b-5 liability, when an allegation of fraud is based upon nondisclosure, there

27  can be no fraud absent a duty to speak. *Chiarella v. United States*, 445 U.S. 222, 235

28  (1980).  One who fails to disclose material information prior to the consummation of a

1   transaction commits fraud only when he is under a duty to do so. And the duty to disclose

2   arises when one party has information that the other party is entitled to know because of a

3   fiduciary or other similar relation of trust and confidence between them. *Id.* @ 228.  Not

4   to require such a fiduciary relationship, would depart radically from the established

5   doctrine that duty arises from a specific relationship between two parties. *Dirks v. S.E.C.*,

6   463 U.S. 646, 654–55 (1983).

7

8        When the nature of the offense is a failure to "blow the whistle", the defendant must

9   have a duty to blow the whistle. And this duty does not come from §10(b) or Rule 10b–5;

10  if it did the inquiry would be circular. The duty must come from a fiduciary relation

11  outside securities law.  *Barker v. Henderson, Franklin, Starnes & Holt*, 797 F.2d 490, 496

12  (7th Cir. 1986).  The duty to disclose material facts arises only where there is some basis

13  outside the securities laws, such as state law, for finding a fiduciary or other confidential

14  relationship. *Fortson v. Winstead, McGuire, Sechrest & Minick*, 961 F.2d 469, 472 (4th

15  Cir. 1992).

16

17       **B.**     **Lauer Owed No Duty to The Fund Investors and Their Counsel**

18       It is well-settled an attorney owes no duty of care to his client's adversary.  *Tocco v.

19  Richman Greer Professional Association*, 553 F.Appx. 473, 475 (6th Cir. 2013). An

20  attorney has no duty to protect the interests of an adverse party for the obvious reasons that

21  the adverse party is not the intended beneficiary of the attorney's services, and that the

22  attorney's undivided loyalty belongs to the client. *Fox v. Pollack* (1986) 181 Cal.App.3d

23  954, 961.

24

25       A lawyer cannot be held liable for misrepresentation under section 10(b) for failing

26  to disclose information about a client to a third party absent some fiduciary or other

27  confidential relationship with the third party. *Schatz v. Rosenberg*, 943 F.2d 485, 490 (4th

28  Cir. 1991).

**NOTICE OF MOTION AND MOTION TO DISMISS**

The Court in *In re Cascade International Securities Litigation*, 840 F.Supp. 1558, 1564 (S.D. Fla. 1993) explains,

> "These law firms represented *Cascade*, not any third party, and therefore did not have duty to investigate their client. While Plaintiffs claim a great injustice would be done to purchasers of Cascade stock if these law firms were to be dismissed from the suit, this Court does not believe that the current law requires a law firm to direct its activities from representation to investigation of their clients at the slightest suggestion that their clients may be involved in unsavory activities. The Court will not go so far as to require law firms to fully investigate their clients at any hint that they may be conducting fraudulent activities, and then to punish the law firms if they do not do so. Otherwise, the law firms would be charged with a duty to the public at large to 'tattle' on their clients."

The *In re Cascade* opinion concludes that since plaintiffs failed to demonstrate any kind of fiduciary relationship between the defendant law firms and plaintiffs, no duty to disclose exists, and, therefore, no action for securities fraud can be maintained against the defendant law firms. 840 F. Supp. @ 1564-65.

Similarly, in *Schatz v. Rosenberg*, 943 F.2d 485 (4th Cir. 1991), the plaintiffs maintained the defendant's lawyers were liable for securities fraud since they remained silent even though they knew their client's financial statements and an update letter relied upon by the plaintiffs' were false and that the lawyers had prepared draft closing documents containing misrepresentations.  The Appellate Court affirmed the trial court's granting of a 12(b)(6) motion, instructing,

> "Unless a relationship of "trust and confidence" exists between a lawyer and a third party, the federal securities laws do not impose on a lawyer a duty to disclose information to a third party." *Id.* @ 492.

### C.    Lauer Actually Owed a Duty Not to Disclose

#### i.    The Attorney-Client Privilege

It is the duty of an attorney to maintain inviolate the confidence, and at every peril to himself or herself to preserve the secrets, of his or her client. *Cal. Bus. & Prof. Code* §6068(e)(1). The object of the attorney-client privilege is to enhance the value which society places upon legal representation by assuring the client the opportunity for full

1  disclosure to the attorney unfettered by fear that others will be informed.  *Glade v.*

2  *Superior Court* (1978) 76 Cal.App.3d 738, 743.

3

4       The relation between attorney and client is a fiduciary relation of the very highest

5  character and binds the attorney to most conscientious fidelity. Among other things, the

6  fiduciary relationship requires that the attorney respect his or her client's confidences.

7  *Zador Corp. v. Kwan* (1995) 31 Cal.App.4th 1285, 1293. An attorney required by law to

8  disclose material facts, to third parties might thus breach his or her duty, required by good

9  ethical standards, to keep attorney-client privileges. *In re Towers Financial Corporation*

10  *Noteholders Litigation*, 1995 WL 571888, at *17 (S.D.N.Y. Sept. 20, 1995).

11

12            ii.   The Duty of Confidentiality

13       In addition to the attorney-client privilege, an attorney owes to his or her client a

14  duty of confidentiality.  *Dietz v. Meisenheimer & Herron* (2009) 177 Cal.App.4th 771,

15  786. This duty of confidentiality is broader than the attorney-client privilege and protects

16  virtually everything the lawyer knows about the client's matter regardless of the source of

17  the information.  *Elijah W. v. Superior Court* (2013) 216 Cal.App.4th 140, 151.  These

18  confidences may or may not be subject to the attorney-client privilege, but must

19  nonetheless be kept confidential by the attorney so as not to cause the client or former

20  client embarrassment or harm. *Chubb & Son v. Superior Court* (2014) 228 Cal.App.4th

21  1094, 1104.

22

23    **D.   Plaintiff Alleges Lauer Should Have Disclosed Attorney-Client**
        **Privileged and Confidential Information**

24       All of the information Lauer allegedly failed to disclose was told to him by his

25  clients and therefore subject to the attorney-client privilege, and also falls within the

26  broader duty of confidentiality because it concerns his client.  As articulated in *Renovitch*

27  *v. Kaufman*, 905 F.2d 1040, 1048 (7th Cir. 1990), "Simply put, lawyers are not required to

28  tattle on their clients in the absence of some duty to disclose. To the contrary, attorneys

---

**NOTICE OF MOTION AND MOTION TO DISMISS**

1  have privileges not to disclose."  Thus, Lauer could not disclose any of the information

2  plaintiff alleges he should have disclosed to the Fund investors.

3

4  **VI.  THE FIRST AND SECOND CLAIMS FOR RELIEF FAIL TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED BECAUSE LAUER DID NOT EMPLOY A MANIPULATIVE, DECEPTIVE OR FRAUDULENT DEVICE**

5

6

7  **A.    Employment of Manipulative, Deceptive or Fraudulent Device Required**

8  The First Claim for Relief alleges Lauer violated Section 10(b) of the Exchange Act

9  [15 U.S.C. §78j(b)] and Rule 10b-5 thereunder [17 C.F.R.  - § 240.10b-5] (Compl. ¶67.).

10  Section 15 U.S.C. §78j(b) provides it shall be unlawful for any person to use or employ

11  "any manipulative or deceptive device" in connection with the purchase or sale of any

12  security.  Similarly, 17 C.F.R.-§240.10b-5 makes it unlawful for any person to "employ

13  any device, scheme, or artifice to defraud" in connection with the sale of any security.

14

15  The Second Claim for Relief alleges Lauer violated Section 17(a) of the Securities

16  Act [15 U.S.C. §77q(a)] (Compl. ¶70.).  Section 77q(a) makes it unlawful for any person

17  to "employ any device, scheme, or artifice to defraud" in connection with the purchase or

18  sale of any security.

19

20  Plaintiff suggests a novel and untenable theory that Lauer preparing the Transaction

21  Documents constitutes the employment of a manipulative, deceptive or fraudulent device.

22

23  **B.    The Transaction Documents Are Not Representations of Distribution's Ability to Pay**

24  The statement in an agreement "I promise to pay" is not equivalent to "I have the

25  current ability to pay." As such, the statement "I promise to pay" was not a false

26  representation.  *Heine v. Bank of Oswego*, 144 F. Supp. 3d 1198, 1218 (D. Or. 2015). See

27  also, *Trefoil Park, LLC v. Key Holdings, LLC*, 2016 WL 837920, at *5 (D. Conn. Mar. 3,

28  2016)(a promise to pay was not a representation of the ability to pay).

1    The sublease between Distribution and the Fund created an obligation on the part of

2   Distribution to pay. The sublease was not a representation of Distribution's ability to pay.

3   Plaintiff confuses these two concepts to suggest the sublease fraudulently represented

4   Distribution's ability to pay the sublease payments.

5

6    **C.      The Closing Documents Cannot Create Obligations On A Nonparty**

7    It goes without saying that a contract cannot bind a nonparty. *E.E.O.C. v. Waffle*

8   *House, Inc.*, 534 U.S. 279, 294, (2002). The obligations of a contract are limited to the

9   parties to the contract and cannot be imposed on a nonparty. *ARE Sikeston Limited*

10   *Partnership v. Weslock Nat., Inc.*, 932 F. Supp. 240, 242 (E.D. Mo. 1996).  See, also

11   *Gowen Oil Company, Inc. v. Abraham*, 2010 WL 11463696, at *6 (S.D. Ga. Sept. 3, 2010)

12   (right of first refusal provision does not create an obligation on the part of a nonparty to

13   the contract to disclose the impending purchase, no more than it creates a duty on his

14   lawyers to do so. Contractual obligation is personal to contracting party and creates no

15   duties on the part of third parties.)

16

17    Plaintiff does not, and cannot, allege Lauer was a party or signatory to, or even

18   referenced in, any of the Transaction Documents.  Since the Transaction Documents do not

19   create any obligations on Lauer's part, they cannot constitute fraudulent statements by him.

20

21    **D.      The Closing Documents Are Arms-Length Transactions Negotiated by Counsel**

22    Courts have consistently found agreements among parties represented by counsel to

23   be enforceable, arms-length transactions.  See, *Citibank, N.A. v. Itochu International Inc.*,

24   2003 WL 1797847, at *1 (S.D.N.Y. Apr. 4, 2003) (Plaintiffs are sophisticated business

25   entities who were represented by counsel and negotiated the Agreement at arm's length.

26   This Court, therefore, will hold plaintiffs to the agreement to which they bargained);

27   *Schempp v. GC Acquisition, LLC*, 630 F.Appx. 541, 545–46 (6th Cir. 2015) (party was

28   represented by an attorney who extensively negotiated the agreement —an arms-length

**NOTICE OF MOTION AND MOTION TO
DISMISS**

12

1   transaction); *ACP GP, LLC v. Putnam County. Memorial Hosp.*, 2016 WL 5109143, at *2

2   (D.N.J. Sept. 19, 2016) (party was represented by counsel when the agreement was

3   negotiated, reviewed, and subsequently executed, and advised by that same counsel that

4   the agreement was valid and enforceable).

5

6       The Fund investors were represented by sophisticated counsel who reviewed and

7   negotiated the Transaction Documents.  As such, there is a presumption the Transaction

8   Documents are enforceable, arms-length agreements.

9

10      **E.    An Attorney Preparing Documents Is Not Making Representations to**

11          **the Opposing Party**

12      An attorney cannot approve an agreement or give a legal opinion on behalf of an

13  opposing party.  *B.L.M. v. Sabo & Deitsch* (1997) 55 Cal.App.4th 823, 839.  In rejecting

14  plaintiff's theory of liability for defendant law firm, the Court in *B.L.M.* explained,

15      "According to this theory, it would appear that any time the parties to a
        contract are named in the contract, and a law firm is named in the contract as
16      representing one of the parties, the law firm would owe a professional duty
        of care to all the other parties named in the contract as well. We reject this
17      approach as being unworkable and undermining the very nature of the
        attorney-client relationship." *Id.* @ 832.
18

19      Similarly, in *Schatz v. Rosenberg*, 943 F.2d 485, 497 (4th Cir. 1991) the Court held

20  a lawyer cannot be liable for the representations of a client, even if the lawyer incorporates

21  the client's misrepresentations into legal documents or agreements necessary for closing

22  the transaction.  The *Schatz* opinion rejects attorney liability, explaining,

23      "Otherwise, there would be a per se rule holding attorneys liable in every
        securities fraud case, because in virtually every transaction, attorneys draft
24      the closing documents. Clearly, the fact that an attorney drafts a closing
        document does not automatically create a warranty that every statement and
25      agreement made by the client is true. Any other result would make attorneys
        co-guarantors and co-signatories, along with their clients, in every securities
26      transaction." *Id.* @ 497.

27

28

**NOTICE OF MOTION AND MOTION TO
DISMISS**

13

1    Lauer did not represent the Fund investors. The Funds had their own counsel.

2   Accordingly, by preparing the Transaction Documents, Lauer was not making any

3   representations to the opposing party, the Fund investors.

4

5    **F.    The Investors and Their Counsel Cannot Rely on Lauer's
              "Representations"**

6    In *Tocco v. Richman Greer Professional Association*, 553 F.Appx. 473 (6th Cir.

7   2013), attorneys for a Ponzi scheme operator were not liable to a defrauded investor for

8   failing to disclose their client's financial condition.  The *Tocco* opinion instructs,

9        "Reasonable reliance by a party upon an attorney's representations cannot
         exist where the interests of that party are adverse to those of the attorney's
10       client. As is apparent, it is unreasonable for a nonclient to repose confidence
         and trust in an attorney when any of the interests of the client and the
11       nonclient are adverse. Indeed, placement of trust, confidence, and reliance ...
         is unreasonable if the interests of the client and nonclient are ... even
12       potentially adverse."
         *Id*. @ 475,  citations omitted.
13

14    In *Lopes v. Vieira*, 543 F.Supp.2d 1149, 1176 (E.D. Cal. 2008), this District held,

15       "Traditionally, lawyers are accountable only to their clients for the
         sufficiency of their legal opinions. It is well understood in the legal
16       community that any significant increase in attorney liability to third parties
         could have a dramatic effect upon out entire system of legal ethics. An
17       attorney required by law to disclose 'material facts' to third parties might
         thus breach his or her duty, required by good ethical standards, to keep
18       attorney-client confidences. Similarly, an attorney required to declare
         publicly his or her legal opinion of a client's actions and statements may find
19       it impossible to remain as loyal to the client as legal ethics properly require."

20

21    As explained above, the Transaction Documents do not contain "representations"

22   by Lauer.  Even assuming *arguendo* they do, the *Tocco* decision makes clear that since the

23   Fund investors' interests were adverse to Solutions and Distribution, the Fund investors

24   could not rely on Lauer's "representations" in the Transaction Documents.  The *Lopes*

25   decision articulates the strong public policy against extending a lawyer's liability to third

26   parties such as the Fund investors.

27

28

**NOTICE OF MOTION AND MOTION TO
DISMISS**

14

### G.   An Attorney Providing Legal Services Is Not Enough to Establish Liability

Lawyers do not vouch for the probity of their clients when they draft documents reflecting their clients' promises, statements, or warranties. *Schatz v. Rosenberg*, 943 F.2d 485, 495 (4th Cir. 1991). Several Courts have found providing legal services cannot establish RICO liability.  See e.g., *Baumer v. Pachl*, 8 F.3d 1341, 1344 (9th Cir. 1993) (attorney preparing partnership agreement and sending letters insufficient for liability since attorney's role was limited to providing legal services to the limited partnership; he did not direct or control the RICO enterprise); *Biofeedtrac, Inc. v. Kolinor Optical Enterprises & Consultants, S.R.L.*, 832 F.Supp. 585, 591 (E.D. NY., 1993) (no RICO liability where attorney provided advice and legal services to advance a fraudulent scheme but was not involved in creating the scheme); and *Nolte v. Pearson*, 994 F.2d 1311, 1317 (8th Cir. 1993) (conduct of attorneys insufficient to impose liability since attorneys did not participate in the operation or management of the enterprise).

Lauer is not alleged to be an employee, officer, director or shareholder of Solutions or Distribution.  He was outside counsel. He did not direct, control or participate in the management or operating of either entity. Lauer provided legal services by drafting the Transaction Documents.  The mere provision of legal services is not enough to establish liability.

### H.   Lauer Allegedly Being Aware of Distribution's Financial Condition and Drafting the Transaction Documents Does Not Constitute Fraud

In *Bracht v. Grushewsky*, 448 F.Supp.2d 1103 (E.D. Mo. 2006), plaintiff purchased an airplane from defendant Grushewsky.  Subsequently, Grushewsky told plaintiff he could not complete the airplane to plaintiff's standards and offered to return the purchase price. Plaintiff never received any money back.  Defendant Gross was Grushewsky's attorney who prepared the purchase agreement for the airplane. In addition to suing Grushewsky, plaintiff sued Gross on the theory that Gross was aware of defendant's

**NOTICE OF MOTION AND MOTION TO DISMISS**

financial problems and nonetheless continued to sell planes to new customers and kept drafting contracts for the sale of new planes. The Court granted Gross' motion for summary judgment, holding (i) an attorney's awareness of financial problems does not constitute fraud; (ii) an attorney's awareness of a problem and not following up on the problem does not constitute fraud; and (iii) drafting legal documents in spite of an awareness of a corporation's financial problems does not constitute fraud.  (448 F. Supp. 2d @ 1112.)

The same reasoning applied by the Court in *Bracht* applies to the instant case.  The allegation that Lauer knew of Distribution's financial condition and kept drafting legal documents does not constitute fraud.

In sum, Lauer providing legal services and drafting the Transaction Documents does not constitute the employment of a manipulative, deceptive of fraudulent device. As such, the First and Second Claims for Relief must be dismissed.

## VII.   THE SECOND CLAIM FOR RELIEF FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED BECAUSE LAUER DID NOT OBTAIN MONEY OR PROPERTY

The essence of the Section 17(a)(2) claim is that the person, in the offer or sale of securities, obtained money or property by means of an untrue statement of material fact. 15 U.S.C. § 77q(a). It is not sufficient that a materially untrue statement was made and the person also made money, such as the incidental payment of a scheduled salary and bonus. It must be plausibly alleged that the money was obtained "by means of" the false statement. Thus, regardless of the manner of compensation, if the person would have earned the same fees or compensation regardless of whether the statement was false, a Section 17(a)(2) claim does not lie. *United States Securities and Exchange Commission v. Wey*, 246 F.Supp.3d 894, 915 (S.D.N.Y. 2017).

In *Wey*, the Court granted defendant's 12(b)(6) motion, finding the payment of legal fees is not obtaining money or property by means of an alleged misrepresentation. See also, *United States Securities and Exchange Commission v. DiMaria*, 207 F.Supp.3d 343, 358 (S.D.N.Y. 2016)(dismissing 17(a)(2) claim against executive who signed off on fraudulent financial statements because there were no allegations that defendant's compensation was increased in any way by the fraud); and *U.S. Securities and Exchange Commission v. Syron*, 934 F.Supp.2d 609, 640 (S.D.N.Y. 2013) (rejecting argument that employee "obtains money or property" by engaging in fraudulent activity that is within the scope of his employment and for which he is compensated by his employer, without allegations that employee's compensation was affected in some way by the fraud).

Similar to counsel for the Fund investors and tax counsel in the transaction, Lauer was paid legal fees to prepare the Transaction Documents. The Court in *Wey* clarifies that payment of legal fees is not obtaining money or property by means of an alleged misrepresentation.  Likewise, since Lauer's legal fees were set per transaction, in accord with *DiMaria* and *Syron*, Lauer did not obtain money or property.

## VIII.  THE THIRD AND FOURTH CLAIMS FOR RELIEF FOR AIDING AND ABETTING FAIL TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

### A.    No Aiding and Abetting Liability Since No Duty to Disclose

For aiding and abetting liability, knowledge of a material omission is not enough. There must also be a duty to disclose. When the nature of the offense is a failure to "blow the whistle", the defendant must have a *duty* to blow the whistle. And this duty does not come from § 10(b) or Rule 10b–5; if it did the inquiry would be circular. The duty must come from a fiduciary relation outside securities law.  *Barker v. Henderson, Franklin, Starnes & Holt,* 797 F.2d 490, 496 (7th Cir. 1986), citing *Dirks v. SEC,* 463 U.S. 646, 653–54, (1983);  *Chiarella v. United States,* 445 U.S. 222, 227–35.  Absent a duty to

disclose, allegations a defendant knew of the wrongdoing and did not act fail to state an aiding and abetting claim. *Schatz v. Rosenberg*, 943 F.2d 485, 496 (4th Cir. 1991).

For the reasons set forth in Section V above, Lauer did not owe a duty to disclose to the Fund investors or their counsel. As such, there can be no liability for aiding and abetting.

### B.     No Aiding and Abetting Liability Since No Direct Liability

The plaintiff must show that each person alleged to be an aider or abetter himself committed one of the "manipulative or deceptive" acts or otherwise met the standards of direct liability.  *Barker v. Henderson, Franklin, Starnes & Holt*, 797 F.2d 490, 495 (7th Cir. 1986).

For the reasons set forth in Section VI above, Lauer did not commit a manipulative or deceptive act or otherwise meet the standards for direct liability for securities fraud. As such, there can be no liability for aiding and abetting.

### IX.     CONCLUSION

For the foregoing reasons, defendant Ari J. Lauer respectfully requests the Court grant his Motion to Dismiss for Failure to State a Claim Upon Which Relief Can Be Granted.

Respectfully submitted,

LAW OFFICES OF ARI J. LAUER

By: _____
ARI J. LAUER
Attorneys for Defendant

## MEET AND CONFER CERTIFICATION

I certify the following:

1.      I sent Dean Conway, counsel for plaintiff Securities and Exchange Commission, an email the morning of December 19, 2022 explaining Judge Drozd's Standing Order requires the parties to meet and confer prior to filing a motion. I attached a copy of this Motion to Dismiss to my email.

2.      My email requested Mr. Conway respond no later than noon on December 21, 2022 if he wished to discuss the Motion to Dismiss as I planned on filing the motion on Wednesday, December 21, 2022 or Thursday, December 22, 2022.  Otherwise, I offered to advise the Court that the SEC believes the Complaint is well pled.

3.      Mr. Conway and I have communicated several times by email in this case. I sent my email to the same email address for Mr. Conway as used in our other communications.

4.      After not receiving any response from Mr. Conway to my initial email, I sent Mr. Conway another email at 12:16 p.m. on December 21, 2022.  I explained in my email that my response to the Complaint is due December 26, 2022, but that I would be out of the office from December 22nd through December 27th.  I stated that if Mr. Conway needed more time to review the motion, he could grant me an extension of time to respond to the Complaint and I would wait to file the motion.  My email further stated that I would wait until the following morning and if I didn't hear back, I would advise the Court that I tried to meet and confer with him but did not hear back in response to my emails.

5.      As of the time of filing this Motion, I have not received any response to my emails to Mr. Conway attempting to meet and confer regarding this Motion.


_____
ARI J. LAUER


_____
**NOTICE OF MOTION AND MOTION TO DISMISS**

19

1

## CERTIFICATE OF SERVICE

2

3        I certify that on December 22, 2022, a copy of the foregoing document was served

4    upon all counsel of record via ECF.

5

6

7                                          _____

8                                          ARI J. LAUER

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**NOTICE OF MOTION AND MOTION TO DISMISS**